UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HSBC BANK USA, N.A., AS TRUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2005-WMCI, | § § § § § § | |
| Plaintiff/Counter-Defendant, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-3522-B |
| KENNETH E. CRUM, | § § | |
| Defendant/Counter-Plaintiff, | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff/Counter-Defendant HSBC Bank USA, N.A., as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-WMCI's (Plaintiff, HSBC, or the bank) Motion for Summary Judgment (Doc. 38). For the following reasons, HSBC's Motion is **DENIED without prejudice** pending additional briefing as explained below.

### I.

### BACKGROUND

This is a mortgage case involving three issues that must be addressed in order to resolve Plaintiffs' motion for summary judgment: (1) whether HSBC actually owns the home equity note in question and thus has standing to foreclose on Defendant's property; (2) if so, whether the applicable statute of limitations prevents it from doing so; and (3) if not, whether it has complied with all of the procedural requirements to obtain a foreclosure judgment.

- 1 -

On or around July 7, 2004, Defendant/Counter-Plaintiff Kenneth Crum (Crum) executed a home equity note (the Note) with WMC Mortgage Corporation (WMC) in order to borrow $116,000.00 to purchase the real property at issue in this suit—2499 Materhorn Drive, Dallas, TX 75228 (the Property). Doc. 39, Pl.'s Br. in Supp. of Mot. Summ. J. ¶ 2 [hereinafter Pl.'s Br.]; Doc. 46, Def.'s Resp. to Pl.'s Mot. Summ. J. ¶ 5 [hereinafter Def.'s Resp]. Through a series of transfers, HSBC says it came to hold the Note, along with its status as beneficiary of the Security Interest. Doc. 39, Pl.'s Br. ¶ 3. Crum disagrees, pointing to: (1) conversations he allegedly had with HSBC employees and agents, during which he says he learned that HSBC has no record in its databases of him, his Social Security Number, the Property, or any existing account between him and the bank; and (2) the Security and Exchange Commission's public database, EDGAR, which Crum says shows HSBC sold all of its assets—including the Note, supposedly—on or about April 1, 2013. Doc. 46, Def.'s Resp. ¶¶ 16–17.

Ownership disputes aside, the parties agree to the following sequence of events:

May 11, 2009: Crum defaulted on his loan and law firm Mackie Wolf Zientz & Mann, P.C. (MWZM), on behalf of mortgage servicer Wilshire Credit Corporation (Wilshire), sent him a Notice of Default and Intent to Accelerate via certified mail. *Id.* ¶ 6; Doc. 39, Pl.'s Br. ¶ 5.

June 10, 2009: Wilshire formally accelerated the loan and MWZM sent Crum a Notice of Acceleration of Loan Maturity via certified mail. Doc. 46, Def.'s Resp. ¶ 6; Doc. 39, Pl.'s Br. ¶ 5.

October 15, 2013: a different loan servicer, Select Portfolio Servicing Inc. (SPS), to whom the loan had since been transferred, sent a Demand Letter – Notice of Default to Crum via United States mail. Doc. 46, Def.'s Resp. ¶ 7; Doc. 39, Pl.'s Br. ¶¶ 7, 15.

March 14, 2014: MWZM again formally accelerated the debt, this time on SPS's behalf, by sending Crum a Notice of Acceleration of Loan Maturity via certified mail. Doc. 46, Def.'s Resp. ¶ 7; Doc. 39, Pl.'s Br. ¶ 7.

April 15, 2014: HSBC's agents decelerated the loan, sending Crum a Notice of Rescission

of Loan Maturity via certified mail. Doc. 46, Def.'s Resp. ¶ 8; Doc. 39, Pl.'s Br. ¶ 8.

May 21, 2014, MZWM again accelerated the Note, sending Crum a Notice of Acceleration of Loan Maturity via certified mail. Doc. 46, Def.'s Resp. ¶ 8; Doc. 39, Pl.'s Br. ¶ 8.

September 29, 2014: HSBC sued to obtain a foreclosure order under the loan agreement. Doc. 46, Def.'s Resp. ¶ 9; Doc. 39, Pl.'s Br. ¶ 9.

Based on this timeline, Crum argues HSBC's suit is time barred, as the statue of limitations to enforce a security instrument, absent rescission, is four years. Doc. 46, Def.'s Resp. ¶¶ 2, 10. So, Crum reasons, because (1) there was no rescission and (2) HSBC sued on September 29, 2014, *see* Doc. 1, Compl., well after its legal right to do so was supposedly extinguished, its suit must be dismissed. Doc. 46, Def.'s Resp. ¶¶ 2, 10

HSBC takes issue with Crum's logic, alleging that his many omissions change the outcome of this case. But first, it concedes two points: (1) Texas law requires one to exercise its lien or power of sale within four years after an action accrues; and (2) generally, when a note or deed of trust contains an optional acceleration clause, the action accrues when the holder actually exercises its option to accelerate. Doc. 57, Pl.'s Corrected Reply ¶ 18 (citing *Rivera v. Bank of Am., N.A.*, 607 F. App'x 358, 360 (5th Cir. 2015); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001); Tex. Civ. Prac. & Rem. Code Ann. § 16.035). Thus, ordinarily, the statute of limitations would bar HSBC's claim as of June 10, 2013, four years after HSBC first accelerated the Note.

But HSBC says that is not the case here and offers two reasons in support. First, because Crum filed for bankruptcy and sued to prevent foreclosure, the clock stopped, the statute of

limitations was tolled, and HSBC is still able to sue now. Doc. 57, Pl.'s Corrected Reply. ¶ 1.[1] More specifically, HSBC contends that (1) Crum's bankruptcy suit gave it another 127 days to file—Crum filed for Chapter 7 on June 3, 2013, and was granted a discharge on October 7, 2010, rendering HSBC's lien unenforceable during this time, *id.* ¶ 15, and (2) Crum's foreclosure prevention suit gave it another 500 days—Crum sued on July 4, 2011, HSBC removed on August 15, 2011, and defendants (HSBC included) were granted summary judgment on November 4, 2012, again rendering HSBC unable to pursue foreclosure during this time. *Id.* ¶ 17.

Second, HSBC alleges that it abandoned acceleration on October 15, 2013, when it sent Crum a notice-of-default for less than the full amount due. *Id.* ¶ 20. This, the bank says, restored the loan to its original condition, restarted the limitations period, and allows it to sue here now. *Id.* ¶¶ 20–21.

Examining the summary judgment record, the Court finds that Crum has not presented sufficient evidence to demonstrate there exists a genuine dispute of material fact as to whether (1) HSBC actually owns the note; or (2) the statue of limitations prevents foreclosure. That being said, the Court also finds HSBC has not definitively proven it has complied with Texas' procedural requirements for obtaining a foreclosure judgment. Namely, it is not clear whether it sent the October 15, 2013 second Notice of Default via certified mail. Accordingly, the Court **DENIES** HSBC's Motion for Summary Judgment **without prejudice** and **GRANTS** both parties **thirty days (30)** to file supplemental briefing on the issue of whether HSBC has complied with the procedural

---

[1] HSBC says it was not aware of the suit earlier because Crum failed to respond to certain interrogatories on point. *Id.* ¶ 6. But it has since "come to HSBC's attention that Mr. Crum has filed for bankruptcy protection an [initiated] an affirmative lawsuit to half foreclosure proceedings." *Id.* ¶ 9.

foreclosure requirements, discussed below in Section III(B). Supplemental briefing is now due **March 24, 2016.**

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant ultimately bears the burden of proof at trial, however, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

# ANALYSIS

A.    *Crum's Affirmative Defenses*

    1.    <u>Does HSBC Own the Note?</u>

To support its theory that HSBC does not hold the promissory note in question—and is therefore unentitled to enforce it—Crum offers only his own affidavit.[2] Doc. 47-1, Def.'s App., Aff. of Kenneth Crum 1 (Crum Aff.). There, he swears to the fact that, on September 2, 2015, he called HSBC, offered his personal information to a number of employees, and asked whether there was any record of mortgage-related debt on his part in the bank's system. *Id.* All individuals evidently answered "no," and Crum now contends, based entirely upon these representations, that this means he has no mortgage with HSBC. *Id.; see also* Doc. 46, Def.'s Resp. ¶¶ 17–18.

HSBC, for its part, has demonstrated that: (1) the Note exists, *see* Doc. 40-1, Pl.'s Mot. Summ. J. App. 7–11 [hereinafter Pl.'s MSJ App.], Ex. A-1, Home Equity Note; (2) the security interest exists, *id.* at 12–33, Ex. A-2, Texas Home Equity Security Instrument; (3) both were assigned from WMC to Merrill Lynch, *id.* at 34–37, Ex. A-3, Assignment from WMC to Merrill Lynch; (4) then assigned from Merill Lynch to HSBC, *id.* at 38–40, Ex. A-4, Assignment from Merrill Lynch to HSBC; (5) and that Crum eventually defaulted on the Note. *See id.* at 41–42, Ex. A-5, Note Allonge; *id.* at 43–52, Ex. A-6, Payment History.

All this, of course, does not address Crum's argument—that HSBC sold all of its assets,

---

[2] Crum also insists that EDGAR, SEC's online database, shows HSBC sold all of its assets on or about April 1, 2013. Doc. 46, Pl.'s Resp. 17. But Crum does not offer anything in his appendix demonstrating this is so, nor does he provide the Court with a URL or any instruction on how to go about obtaining this information. The Court is not required to, nor will it, scour the record or internet in order to find the information to which Crum alludes.

"which would undoubtedly include [Crum's] promissory note[,] on or about April 1, 2013." Doc. 46, Def.'s Resp. ¶ 17. But Crum, for his part, has offered no evidence to demonstrate that this sale did occur. *See generally id.* Therefore, the Court cannot conclude that a reasonable jury, examining the evidence presented here, could possibly find that HSBC sold all of its assets, including the Note. That established, there is no reason to question HSBC's supporting evidence, which suggests it still owns the Note that it acquired on July 14, 2009. *See* Doc. 40-1, Pl.'s MSJ App. at 38–40, Ex. A-4, Assignment from Merrill Lynch to HSBC.

That settled, the Court moves on to consider Crum's statute of limitations defense.

2.      Is HSBC's Claim Barred by the Statute of Limitations?

        i.      *Preliminary issues*

The Court is not persuaded by HSBC's argument that, because Crum never responded to its interrogatires and requests for production relating to past bankruptcy proceedings, foreclosure suits, and statutes of limitations defenses, the bank was left unaware of the relevant lawsuits, discussed above.   Doc. 57-1, Pl.'s Corrected Reply ¶ 9. Though HSBC was not a party to the bankruptcy proceedings, *see id.* at 4–8, Ex. A-1, Bankr. Docket Sheet; *id.* at 9–20, Ex. A-2, Bankr. Pet.; *id.* at 21–23, Ex. A-3, Bankr. Discharge, it was, indeed, a defendant in the foreclosure prevention suit. *See id.* at 25, Ex. A-4, Pl.'s Original Pet. (listing "HSBC BANK USA, NA, AS TRUSTEE FOR THE MLM1 TRUST SERIES 2005-WMC1" as a defendant). Accordingly, without further explanation, the Court finds it at least somewhat disingenuous for HSBC to now suggest it was not aware of Crum's July 2011 foreclosure prevention suit.

Nevertheless—and in spite of the fact that HSBC did not anticipate and preemptively address Crum's statute of limitations defense in its Motion for Summary Judgment (Doc. 39)—the Court still

finds it appropriate to consider the bank's argument and supporting evidence at this time. Under Federal Rule of Evidence 201(c), courts may take judicial notice of a fact not subject to reasonable dispute, such as a bankruptcy proceeding or foreclosure prevention suit. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000) (citing Fed. R. Evid. 201(c), (e)).[3] Accordingly, the Court does just that and considers the two suits.

    *ii.*   *The bankruptcy proceeding*

   "Under Texas law, a secured lender must foreclose on its 'real property lien not later than four years after . . . the cause of action accrues.'" *Rivera*, 607 F. Appx. at 360 (citing Tex. Civ. Prac. & Rem. Code § 16.035(a)). "If the 'deed of trust secured by real property contains an optional acceleration clause, default does not [of itself] start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate.'" *Id.* (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)). Here, both parties agree that the loan was first accelerated on June 10, 2009. *See supra* Sec. II. Ordinarily, then, HSBC would have been required to foreclose by June 10, 2013—four years after first accelerating. But Crum filed for Chapter 7 Bankruptcy on June 3, 2013, and received a discharge October 7, 2010. *See* Doc. 57-1, Pl.'s Corrected Reply 4–8, Ex. A-1, Bankr. Docket Sheet; *id.* at 9–20, Ex. A-2, Bankr. Pet.; *id.* at 21–23, Ex. A-3, Bankr. Discharge. Thus, for the 127 days the bankruptcy proceedings were active, HSBC could not enforce its lien. *See Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 547 (Tex. App.—Dallas 2009) (citing 11 U.S.C. § 108(c)) (emphasis added).[4] Accordingly,

---

[3] Under Federal Rule of Evidence 201(e), however, Crum is still entitled to be heard on this issue, should he timely request such.

[4] "Section 108(c) of the bankruptcy code . . . affords an extension of state-court deadlines under some circumstances. That section provides, in pertinent part: [I]f applicable nonbankruptcy law . . . fixes a period

those proceedings tolled the statue of limitations for HSBC to foreclose upon the Note, giving it until October 15, 2013, to file suit. This, alone, is not enough for HSBC, which did not sue until September 29, 2014. *See* Doc. 1, Compl. That being said, Crum filed another suit before the original statute of limitations' June 10, 2013, expiration date, thereby tolling the statue of limitations once more and giving HSBC extra time to file.

      *iii.*        *The foreclosure prevention suit*

On July 4, 2011, Crum sued HSBC and others to try to halt foreclosure proceedings on the Property, alleging Texas Property Code, Texas Finance Code, and Texas Deceptive Trade Practices Act violations, and bringing quiet title, declaratory relief, breach of contract, negligence and breach of fiduciary duty claims against some or all defendants. *See* Doc. 57-1, Pl.'s Corrected Reply 33–40, Ex. A-4, Pl.'s Original Pet. ¶¶ 40–60. On August 15, 2011, defendants in that case removed the action to federal court, *id.* at 68, Ex. A-5, Docket Sheet 7, and on November 14, 2012, the Court granted summary judgment. *Id.* at 73–74, Ex. A-6, Final Judgment. Thus, for 500 days, Crum's foreclosure prevention suit was active in court. Accordingly, the statute of limitations for HSBC to foreclose upon the Note was tolled once more, this time for 500 days, thus giving the bank until February 25, 2015 to foreclose upon the note—or until October 23, 2014, if one does not apply the tolling from the two suits cumulatively. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915 n.1 (Tex. 2015), *reh'g denied* (June 5, 2015) (citing Tex. R. Civ. P. 36.11(a)) ("The relevant portion

---

for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the [bankruptcy] petition, then such period does not expire until the later of—(1) the end of such period, *including any suspension of such period occurring on or after the commencement of the case*; or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim." *Id.* (emphasis added).

of Rule 736.11(a) states: 'A proceeding or order under this rule is automatically stayed if a respondent files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien.'"). In any event, HSBC filed suit here on September 29, 2014, *see* Doc. 1, Compl., before either date, rendering the distinction meaningless.

B.    *The Merits*

Defenses settled, this is essentially a breach of contract case. In Texas, the elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance, tendered performance, or excuse from performance on the part of the plaintiff; (3) breach on the part of the defendant; and (4) damages suffered by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citations omitted). All elements are present here.

"Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 609 (N.D. Tex. 2014)

The Note and Security Interest here evidence all of the above—Crum took out a loan from WMC, granted it an interest in the Property in return, and agreed to make the necessary payments. Doc. 40-1, Pl.'s MSJ App. at 7–11, Ex. A-1, Texas Home Equity Note; *id.* at 12–33, Ex. A-2, Texas Home Equity Security Interest. WMC then transferred that loan to Merrill Lynch, *id.* at 34–37, Ex. A-3, Assignment from WMC to Merrill Lynch, who in turn transferred it to HSBC. *Id.* at 38–40, Ex. A-4, Assignment from Merrill Lynch to HSBC. Nothing indicates WMC, Merrill Lynch, or HSBC

failed to perform its duties under the contract. It appears, however, that Crum stopped making payments—a fact which Crum does not deny—thus breaching the contract, and, in turn, injuring HSBC. *See* Doc. 40-1, Pl.'s MSJ App. at 43–52, Ex. A-6, Payment History Records.

Breach established, the question becomes whether HSBC has complied with the Texas Property Code requirements for the sale of real property under contract lien. This includes "the mortgage servicer of the debt . . . serv[ing] a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with *written notice by certified mail stating that the debtor is in default* under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." Tex. Prop. Code Ann. § 51.002 (emphasis added).

Based on HSBC's own representations, it is not clear whether it has done so. The bank says that, on May 11, 2009, MWZM sent Crum, on behalf of Wilshire, a Notice of Default and Intent to Accelerate via certified mail. Doc. 39, Pl.'s Br. ¶ 5. (citing Doc. 40-1, Pl.'s MSJ App. at 54,  Ex. A-7, First Notice of Default). But it is not clear whether HSBC's second Notice of Default—sent by SPS to Crum on October 15, 2013—was also sent via certified mail, though it did indisputably notify Crum that he was in default and gave him over twenty days to cure. Doc. 39, Pl.'s Br. ¶¶ 7, 15 (citing Doc. 40-1, Pl.'s MSJ App. 70–73, Ex. A-11, Notice of Default/Demand Letter). Rather, the bank explicitly says it sent the second notice "via United States mail." *Id.* ¶ 15. Given HSBC indicates in the very next paragraph of its brief that it sent the subsequent "Notice of Acceleration of Loan Maturity" "via United States certified and regular mail," the method by which it sent the October 15, 2013, second Notice of Default becomes unclear. *Id.* ¶ 16. The statute, however, requires the Notice of Default be sent via certified mail. *See Bassknight v. Deutsche Bank Nat. Trust Co.,*

3:12-CV-1412-M BF, 2014 WL 6769085, at *5 (N.D. Tex. Dec. 1, 2014), *subsequently aff'd*, 611 Fed. App'x 222 (5th Cir. 2015) ("Among other things, Section 51.002 of the Texas Property Code requires that, prior to foreclosing on real property that is used as a debtor's residence, the mortgage servicer must serve the debtor with (1) a notice of default and (2) a notice of sale . . . [and] [t]he mortgage servicer must serve the notice of default *by certified mail* . . . .") (emphasis added) (internal citations omitted).

Because neither HSBC's briefing nor appendix make clear whether it sent the second Notice of Default by certified mail, the Court **DENIES** HSBC's Motion for Summary Judgment for the time being, but **GRANTS** each party **thirty days (30)** to present briefing on the issue of whether HSBC has comported with the procedural requirements here. That briefing is due by **March 27, 2016.**

## IV.

## CONCLUSION

The Court **DENIES** HSBC's Motion for Summary Judgment at this time because it is unclear whether the bank complied with Section 51.002 of the Texas Property Code—which requires sending default notices by certified mail—when it sent the October 15, 2013 second Notice of Default to Crum. Accordingly, the Court **GRANTS** each party thirty days (30) to brief this issue, and **only** this issue. Briefing is due by **March 27, 2016.**

As for Crum's affirmative defenses—that (1) HSBC no longer owns the Note and therefore has no standing to sue; and (2) the statute of limitations prevents HSBC from suing here now—the Court has determined, as set forth above, that these defenses lack merit. Accordingly, these affirmative defenses will not preclude the Court from granting summary judgment should it find HSBC has complied with the procedural requirements at issue here. No further briefing on these

affirmative defenses will be permitted

      SO ORDERED.

      SIGNED: February 24, 2016.

                                                                JANE J. BOYLE
                                                                UNITED STATES DISTRICT JUDGE